**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

DAVID ALEXANDER OBANDO PADILLA,

　　　　　　　　　　　　　　Petitioner,

v.

CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,

　　　　　　　　　　　　　　Respondents.

Case No.:  3:26-cv-01459-RBM-JLB

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE**

**[Doc. 1]**

Pending before the Court is Petitioner David Alexander Obando Padilla's ("Petitioner") Petition for Writ Of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241.  (Doc. 1.)  For the reasons set forth below, the Petition is **DENIED WITHOUT PREJUDICE**.

## I.    BACKGROUND

Petitioner, a citizen of Ecuador, was admitted to the United States pursuant to a nonimmigrant F1 student visa on December 23, 2021, which was valid until March 25, 2022.  (Doc. 1 ¶ 47; Doc. 5-2 at 3.)

On June 10, 2025, Petitioner was arrested for drug-possession criminal charges in Miami Dade County, Florida.  (Doc. 5-2 at 4; Doc. 1 ¶ 52.)  That same day, United States

1

3:26-cv-01459-RBM-JLB

Immigration and Customs Enforcement ("ICE") encountered Petitioner at the Turner Guilford Knight Correctional Center, and an I-220 form for Warrant for Arrest of Alien was issued for Petitioner's arrest. (Doc. 5 at 2; *see* Doc. 5-2 at 3.) ICE detained Petitioner pursuant to that warrant. (*Id*.; *see* Doc. 5-2 at 3; Doc. 5-3 at 2.)

Petitioner was transferred to the Otay Mesa Detention Center on or around November 14, 2025. (Doc. 1 ¶ 57.) On November 20, 2025, Petitioner was issued a Notice to Appear ("NTA") charging him as removable under "8 U.S.C. § 1227(a)(1)(C), as an individual who was admitted to the United States but failed to maintain or comply with the conditions of the nonimmigrant status." (Doc. 5 at 2; *see* Doc. 5-1 at 2–3.) Petitioner was also placed in removal proceedings under 8 U.S.C. § 1229a. (Doc. 5 at 2.)

On or about January 15, 2026, Petitioner filed an application filed for asylum, withholding of removal, and protection under the Convention Against Torture. (Doc. 1 ¶ 4.) On March 4, 2026, Petitioner had a bond hearing before an immigration judge ("IJ") pursuant to 8 U.S.C. § 1226(a). (Doc. 5 at 3; *see* Doc. 5-4 at 2.) The IJ denied Petitioner's request for a custody redetermination based on a finding of "[d]anger to the community and significant flight risk." (Doc. 5-4 at 2.) On March 23, 2026, Petitioner filed a notice of appeal to the Board of Immigration Appeals ("BIA"). (Doc. 6 at 9.)

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

### III.   **DISCUSSION**

Petitioner claims his immigration detention violates the Fifth Amendment's Due Process Clause, the Administrative Procedure Act ("APA"), and the Fourth Amendment. (Doc. 1 ¶¶ 59–115.)   Respondents contend the Petition should be denied because: (1) Petitioner is lawfully detained under 8 U.S.C. § 1226(a); (2) Petitioner's claims concerning revocation of release are unfounded and present no controversy; and (3) Petitioner has not exhausted his administrative remedies. (Doc. 5 at 3–9.)[1]

**A.   Procedural Due Process**

Petitioner claims that "Respondents did not afford Petitioner due process before revoking his release from custody, depriving him of his liberty interest, and placing him in detention" in violation of the Fifth Amendment's Due Process Clause. (Doc. 1 ¶ 45.) Specifically, Petitioner argues that he has a "liberty interest in remaining free from DHS custody" and that Respondents have "not identified any materially changed circumstances that would warrant detaining [him] after he submitted his" asylum application and supporting evidence. (*Id*. ¶¶ 65, 67.)

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain— lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001).  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning

---

[1]   Respondents also argue this Court lacks jurisdiction under 8 U.S.C. § 1252(g) and § 1252(b)(9). (Doc. 5 at 6–9.)  The Court has consistently rejected this argument and does so again for the same reasons.  *See Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1161–62 (S.D. Cal. 2025).  To the extent Petitioner challenges his "arrest and inability to contest his arbitrary detention" as unlawful (Doc. 1 ¶¶ 7, 12), he is enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025) (emphasis in original).

3:26-cv-01459-RBM-JLB

of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).   To determine whether the procedures afforded to Petitioner are constitutionally sufficient to satisfy the Due Process Clause, the Court considers: (1) the private interest affected, (2) "the risk of an erroneous deprivation of such interest," along with "the probable value, if any, of additional or substitute procedural safeguards," and (3) the Government's interest, including "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 334–35.   Many courts in the Ninth Circuit, including this Court, have found that "all three *Mathews* factors support requiring a hearing before a noncitizen released from immigration detention can be re-detained, even where detention is mandatory." *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1039 (N.D. Cal. 2025).

In this case, however, Petitioner was neither paroled nor conditionally released into the United States.  As Respondents note (*see* Doc. 5 at 4), Petitioner has not been previously detained by ICE or released from immigration detention—Petitioner was admitted into the United States on an F1 student visa which he failed to maintain and therefore expired on March 25, 2022.  (Doc. 5-2 at 3.)   Unlike conditional release or parole, Petitioner's admission on an F1 student visa did not reflect a prior individualized danger and risk determination.  *Cf. Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").   Indeed, no initial danger or flight determination was made until Petitioner's bond hearing where his release on bond was denied.  Petitioner also suggests that his asylum application created a liberty interest in remaining out of custody but fails to provide any authority in support.  (*See* Doc. 1 ¶¶ 44, 62–65.).

Moreover, the Parties agree that Petitioner is detained under 8 U.S.C. § 1226(a).  (*See* Doc. 1 ¶ 69; Doc. 5 at 3.)  Since his re-detention, Petitioner received a bond hearing under § 1226(a), appealed the denial of his release on bond, and is free to continue pursuing his asylum application.   The Court is therefore "not convinced that Petitioner has demonstrated a liberty interest in his release requiring any additional due process

4

protections than Petitioner has already received." *Li v. Larose*, Case No.: 26-CV-1614 JLS (MMP), 2026 WL 948362, at *2 (S.D. Cal. Apr. 8, 2026); *cf. Juan B.P. v. Andrews*, No. 1:26-cv-01475-TLN-CSK, 2026 WL 707468, at *3 (E.D. Cal. Mar. 13, 2026) (noting the petitioner's protected liberty interest arose, not from his entry on a tourist visa but, from his release from ICE custody on bond). Accordingly, Counts One and Six for violations of the Fifth Amendment's Due Process Clause are **DENIED**.

## B.    Substantive Due Process

Petitioner claims that the IJ's denial of custody redetermination "was unsupported by the record." (Doc. 1 ¶ 73.) To the extent Petitioner contests the IJ's factual determinations, the Court lacks jurisdiction to "reweigh [the] evidence" on a challenge to an IJ's bond decision and may "only determine whether the [IJ] applied the correct legal standard." *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) (cleaned up).

Even so, Petitioner failed to exhaust his administrative remedies because he seeks habeas review of the IJ's bond denial ahead of his pending appeal before the BIA. "This short cut was improper." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). A noncitizen "dissatisfied with the IJ's bond determination" must ordinarily "file an administrative appeal so that 'the necessity of detention can be reviewed by . . . the BIA.'" *Id.* (citation omitted). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Id.* The Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up).

Petitioner argues exhaustion would be futile because the BIA "routinely affirm[s] an [IJ's] decision that an immigrant is a danger and flight risk." (Doc. 1 ¶ 31; Doc. 6 at 9.) He also argues that "[w]aiting for the BIA would also cause unreasonable delay." (Doc. 1 ¶ 31; Doc. 6 at 9.) But Petitioner presents no further argument or evidence showing that

his appeal of the IJ's bond denial on such grounds is necessarily futile or that his appeal would not proceed in a timely manner.  As the IJ denied bond based on a finding of danger and risk of flight, "[t]he BIA clearly is empowered to reverse the [IJ's] determinations, including all of the errors Petitioner now alleges were made by the" IJ.  *Nagiyev v. Warden*, Case No.: 25-CV-3744 JLS (MMP), 2026 WL 945965, at *2 (S.D. Cal. Apr. 7, 2026); *cf. Esquivel-Ipina v. LaRose*, 812 F. Supp. 3d 1073, 1080 (S.D. Cal. 2025) (finding, like "other courts in this District . . . that exhaustion would be futile because the [BIA] is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I & N. Dec. 216 (BIA 2025) to find that detention is mandatory").

Accordingly, Count Two for violation of the Fifth Amendment's Due Process Clause is **<u>DISMISSED WITHOUT PREJUDICE</u>** to Petitioner filing an amended petition that follows the exhaustion of administrative remedies.  *See Leonardo*, 646 F.3d at 1160.

**C.     APA**

Petitioner claims that Respondents have violated the INA, implementing regulations, and the APA "[b]y categorically revoking [his] release from DHS custody, and detaining him without notice or consideration of his individualized facts and circumstances." (Doc. 1 ¶ 102.)[2]  Respondents argue that "it is not altogether clear what final agency action Petitioner seeks review over [and] habeas relief is available to challenge only the legality or duration of confinement."  (Doc. 5 at 10 (citations omitted).)

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704; *see Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017) ("[Section] 704's requirement that to proceed under the APA, agency action must be final or otherwise

---

[2]  As previously discussed (*see* Sec.III.A.), Petitioner's claim based on Respondents' alleged revocation of his "release from DHS custody" fails because he was not previously detained or released from immigration detention.  Count Four for violations of the APA therefore necessarily fails on this alternative basis.

3:26-cv-01459-RBM-JLB

reviewable by statute is an independent element without which courts may not determine APA claims."). "Two conditions must be satisfied for an agency action to be final: (1) 'the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature' and (2) 'the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Cancino Castellar v. McAleenan*, 388 F. Supp. 3d 1218, 1247 (S.D. Cal. 2019) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597, (2016)).

In this case, the Court finds there is no final agency action to be reviewed for abuse of discretion because Petitioner's removal proceedings remain ongoing and his appeal of the IJ's bond denial is still pending before the BIA. *See Li* 2026 WL 948362, at *2. Accordingly, Counts Three and Four for violations of the APA are **<u>DENIED</u>** on this basis.

**D.     Fourth Amendment**

Petitioner argues that Respondents violated his Fourth Amendment rights because he "did not pose any danger to any person in the community at large" and his "warrantless arrest . . . constitutes an unreasonable and unlawful seizure." (Doc. 1 ¶¶ 109–110.) Respondents contend that "Petitioner fails to explain why release is the remedy for such alleged violations." (Doc. 5 at 11.) The Court agrees.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. This protection also extends to noncitizens. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (noting that noncitizens "receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"). Courts in this district have denied similar Fourth Amendment claims in the habeas context based on a petitioner's failure to demonstrate release is the proper remedy for such alleged violations. *See Velasquez v. LaRose*, Case No.: 25-CV-3137 JLS (MSB), 2025 WL 3251373, at *4 (S.D. Cal. Nov. 21, 2025) (holding the petitioner "has not met his burden in proving that . . . release is the remedy for the alleged Fourth Amendment violations") (citing *United States v. Crews*, 445 U.S. 463, 474 (1980)); *see also Aredondo v. Lyons*, Case No. 2:25-

7

cv-01838-TMC, 2025 WL 3436812, at *4 (W.D. Wash. Oct. 15, 2025) (holding the petitioner failed to "prove[ ] an entitlement to habeas relief based on his Fourth Amendment claim").

Here, Petitioner fails to "explain why release is the remedy for the alleged Fourth Amendment violations." *Velasquez*, 2025 WL 3251373, at *4; *cf. Cruz v. Barr*, 926 F.3d 1128, 1146 (9th Cir. 2019) (ordering termination of removal proceedings on Fourth Amendment grounds because fruits of the regulatory violation were the only evidence of the petitioner's alienage). Additionally, the record before the Court indicates that Petitioner was detained pursuant to a Warrant for Arrest, issued on an I-200 Form. (Doc. 5-3 at 2.) And at the time he was re-detained by ICE, Petitioner was already in criminal custody after being arrested for drug-related charges. (Doc. 5-2 at 3.)

Accordingly, this Court concludes that Petitioner has not demonstrated his entitlement to release from ICE custody based on the alleged Fourth Amendment violations. Count Six of the Petition is therefore **DENIED**.

### IV.  CONCLUSION

Based on the foregoing reasons, the Petition is **DENIED**. The Court further **ORDERS** as follows:

1. Count Two is **DISMISSED WITHOUT PREJUDICE** to Petitioner filing an amended petition that follows the exhaustion of administrative remedies. *See Leonardo*, 646 F.3d at 1160.

2. Counts One and Three through Six are **DENIED WITHOUT PREJUDICE**.

3. Petitioner may file an amended petition curing the identified deficiencies **on or before May 7, 2026**.

**IT IS SO ORDERED**.

DATE:  April 13, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

8